# CHARLESTON.

ANGLE *v.* MARSHALL.

55 671
60 472

Submitted September 3, 1903—Decided April 22, 1904.

1. ESTATE—*Trustee—Attorney-in-Fact.*

B., the owner of a life estate in six farms in Maryland, and one farm in Berkeley county, West Virginia, containing one hundred and ninety-one acres, by reason of physical disability, (more particularly the loss of speech, brought on by paralysis) having become incapacitated for managing his said farms, both in the interest of himself as life tenant and of his children as remaindermen, conveyed his said life estate to A., as trustee, with full power and authority to manage and control the same as landlord to the same extent as B. could do if acting in person, but such management was to be under the advice of B.; the conveyance making no disposition of any of the property of said B. in the present or future to any third party; no provision for the accumulation of any fund in the hands of the trustee; and provided for the expenditure of all necessary sums from the moneys collected by the trustee for the benefit of B., which expenditures were only limited by the necessities of said B., for his comfort and maintenance "without stint." The remaindermen afterwards, for valuable consideration, conveyed their interests in said one hundred and ninety-one acres, the Berkeley county farm, to L., and L. conveyed the same to M. B. then conveyed for $1,700, cash consideration, his life estate in the last named farm to L., and L. for a like consideration conveyed the same to M. *Held*: that the conveyance of the life estate by B. revoked the powers and authority of A. and terminated the trust as to the farm so conveyed; and, further, *Held*: that although the instrument made and executed by B. to A. was in form a trust deed, it could only operate as to said Berkeley farm as a power of attorney to manage and control the farm in the interest of B. and incidentally in the interest of the remaindermen, and not being coupled with an interest was revocable, notwithstanding it contained a provision of irrevocability. (p. 679).

Appeal from Circuit Court, Berkeley County.

Action by Samuel P. Angle against Mary L. Marshall and others. Decree for defendant, and plaintiff appeals.

*Affirmed.*

FLICK, WESTENHAVER & NOLL, for appellant.

FAULKNER, WALKER & WOODS, for appellee.

MCWHORTER, JUDGE:

J. W. Brillhart had a life estate or was tenant by the curtesy in six farms in Washington county, Maryland, and one farm in Berkeley county, West Virginia, of which his wife had died seized in fee. On the 18th day of November, 1899, said Brillhart executed to Samuel P. Angle of Washington county, Maryland, a deed of trust conveying to him the life estate in said farms together with all crops then growing, garnered, or in process of being garnered, together with all choses in action, all cash in bank and all moneys owing to him from any source whatever, as well as every nature and description of estate, asset chattel or any other kind of property or interest whatever belonging to said Brillhart; assigning in said deed that "by reason of bodily infirmities, in particular the loss of speech brought on by paralysis, and by reason of other bodily infirmities, has become incapable of managing his large financial interests as they should be managed both in the interest of himself as life tenant and of his children as remaindermen;" and reposing great confidence in Samuel P. Angle as a man of integrity and knowledge of the management of farms and business affairs in general, and that they might be more properly managed under the direction and supervision of the court of chancery of Washington county in Maryland. Said conveyance was in trust and confidence, authorizing the trustee to manage his farms, to make leases, collect rents and do all things as fully as the said Brillhart could do acting for himself, requiring him to settle his accounts on the first day of January in each year, or at least within fifteen days thereafter, in the circuit court of Washington county; such settlement to be under oath and subject to exceptions as other accounts formally stated by the auditor of the said court in chancery cases; provided that the trustee should pay to Brillhart such sums during the year as might be necessary for his own comfortable maintenance and expend for the personal benefit and comfort of said Brillhart such other sums for medicine, medical advice, clothing, travelling expenses, etc., as Brillhart might require, said expenditure not to exceed, on the average, $30 per month, but if a greater sum should be needed for the purposes stated, the trustee should allow it, but should not

be called upon to pay the same until the end of the year, and until he had made his annual settlement, "it being the intent of this paragraph that all expenditures necessary for the comfortable maintenance and health of the said John W. Brillhart shall be made in reason and without stint;" providing that the trustee give bond, and fixing his compensation at five per cent. upon his receipts and five per cent. upon his expenditures; and providing also that the deed of trust should be irrevocable, and that it should supersede all powers of attorney theretofore executed by him; and revoked all such powers of attorney and requiring all attorneys in fact under such authority so revoked to settle with the trustee. The said trustee to give the affairs of said Brillhart his personal attention; to look after his comfort and well-being; to consult with the said Brillhart and receive his advice about the management of the farms, and endeavor to the fullest extent possible to adopt the views of the said Brillhart and have him co-operate with the said trustee; but that the judgment of the said Samuel P. Angle should always be paramount.

At the August rules, 1902, Samuel P. Angle, trustee, filed his bill in equity in the clerk's office of the circuit court of Berkeley county against Mary L. Marshall, P. R. Hoffman and John W. Brillhart, defendants, exhibiting the deed of trust hereinbefore described; alleging that at the time of making of said deed of trust said Brillhart was, and has been continuously since that time by reason of bodily infirmities, (more particularly loss of speech brought on by paralysis), incapable of managing his financial interests, both in the interests of himself as life tenant and his children as remaindermen, and which condition instead of improving had grown very much worse; that the deed was recorded in the proper office in Washington county, Maryland, on the 24th of November, 1899, and afterwards on the —————— day of February, 1901, in the clerk's office of the county court of Berkeley county; that said Brillhart filed his petition in the circuit court of Washington county, Maryland, praying the court to assume jurisdiction according to the terms of the deed of trust and supervise the actions of Angle, the trustee, according to the interests and meaning of said deed and according to the law and practice applicable in such cases. A suit in equity in the matter of the trust estate of John W.

Brillhart was docketed in the said court and was known as number 5,616, in equity; that said court made an order assuming jurisdiction of the said trust. Copies. of said trust deed and order were filed as exhibits with the bill. That plaintiff executed bond as required by the trust, and assumed charge of the property conveyed to him, and had continued from that time forward until the present to discharge his duty as such trustee. That he had not been discharged or removed by any order of the court or in any other manner as trustee, and that said suit was still pending. That said trust estate had been adminstered by the court of equity from that time forward until the present. That plaintiff had stated and settled his account annually, and had received and acted from time to time on the directions and orders made by the said court in said cause. That the farm referred to in the deed of trust situated in Falling Waters district, Berkeley county, contained one hundred and ninety-one acres. That during the year 1901, the same was occupied by the defendant P. R. Hoffman under a lease made and entered into between him and the trustee. That when the lease expired on the first of April, 1902, the lessee held over, by consent and acquiescence of plaintiff, on the same terms. That plaintiff had recently learned that Hoffman had been interfered with in his farming operations and in his occupancy by the defendant Mary L. Marshall. That she had represented to Hoffman that she was the sole owner of the farm and plaintiff had nothing further to do with the farm; had no right to the control and management thereof. That she had directed and required said tenant to change and alter the condition of said farm, by making lanes through the same from places different from where the same formerly had been, and at places not desired by plaintiff; had required tenant to put up new fences and to make other repairs to the farm, and by these means had prevailed on the tenant recently to take a lease from her, and to recognize her as the landlord, and rendered him unwillingly to comply with the directions of plaintiff. That said Marshall bases her right to the ownership and control of said farm upon the following facts: That on the 29th of March, 1901, George William Brillhart, one of the two remaindermen in said tract of one hundred and ninety-one acres, executed a deed conveying all his right, title and interest therein to Samuel A. LaFevre, and that on the

23rd day of March, 1901, Mary C. Resh and Franklin D. Resh, her husband, the other of said remaindermen, conveyed all their right, title and interest in said land to said LaFevre, and that afterwards on the 23rd day of April, 1901, LaFevre conveyed all his right, title and interest which he had acquired by virtue of said two deeds in said tract of land to the defendant Mary L. Marshall; exhibiting a copy of each of said deeds. That in addition to the deed of trust made by said Brillhart to plaintiff, the order of the circuit court of Washington county, sitting as a court of equity, assuming jurisdiction of the said trust estate, said LaFevre prevailed upon the said Brillhart to execute a paper writing bearing date the 17th day of July, 1901, whereby he attempted to convey to the said LaFevre all his right, title and interest at law and in equity in and to the said one hundred and ninety-one acres of land, and that afterwards, on the 18th day of December, 1901, the said LaFevre made a deed purporting to convey all his right, title and interest thus acquired from said John W. Brillhart in said land to the said Mary L. Marshall; exhibiting a copy of said deed with his bill.

Plaintiff alleged that the deed of trust made by Brillhart to plaintiff was irrevocable; that after making the same, and especially after the order of the circuit court of Washington county, assuming jurisdiction of said property as a tract to be managed by it, the said John W. Brillhart had no power or authority to execute the paper writing aforesaid, or in any manner to transfer the title to, or the control and management of, the life estate to said Marshall, and the act of said Brillhart, even if made voluntarily and without any undue influence, and had been the act of a person capable of managing his financial affairs, would confer no power upon the grantees, nor any right upon it to the ownership and control of the said estate; that the conveyance from Brillhart to LaFevre was made without any order of the court authorizing or permitting the same to be made; that it was made without the consent or authority of plaintiff and was accepted by the said LaFevre and Marshall with full knowledge of the deed of trust to the plaintiff; that the trust vested in him, and of which the court had assumed jurisdiction, was of such a nature that the plaintiff as trustee under his obligation was required to continue in the actual management and control of the life estate of Brillhart in said real

estate, and that he was not authorized or permitted under the law to allow the said Brillhart or any grantee of his to assume any control over said estate, or to receive the rents and profits therefrom, but that the plaintiff himself continue in the actual and exclusive control of the same so long as said Brillhart should continue to live, or until he should be discharged by order of the court, or the said deed of trust appointing the plaintiff, should have been cancelled in some suit instituted for that purpose, and that he may ask for advice and direction from the court; and praying that an injunction be awarded enjoining and restraining the said Hoffman from attorning to the said Marshall as the owner of the life estate of Brillhart in said one hundred and ninety-one acres of land, and from delivering to her the landlord's share of wheat, hay and corn, or other crops grown thereon, or from paying to her the proceeds in such crops, and that the said Marshall be enjoined from interfering in any manner with plaintiff's control and management of said farm, and with the tenant in possession thereof, and that he be advised and directed as to his duties in the premises and in the performance and execution of the trust; and for general relief.

The bill was presented to Honorable R. W. Dailey, Jr., judge of the 12th judicial circuit, who granted an injunction as prayed for in the bill, enjoining the defendant P. R. Hoffman from attorning to the defendant Mary L. Marshall as the owner of the life estate of John W. Brillhart in the one hundred and ninety-one acres of land, and from delivering to her the landlord's share of wheat, hay, corn and other crops grown on said tract, and from paying to her the proceeds of such crops, and the defendant Marshall from interfering in any manner with plaintiff's control and management of said farm, and with the tenant in possession. On the first day of August, 1902, the defendant Marshall, by her counsel, moved the court to dissolve the injunction, to which motion plaintiff appeared and after same was argued the court took time to consider thereof, and on the 23rd day of September, 1902, the cause was heard by the court upon the demurrer filed by defendant Marshall, to plaintiff's bill, and upon her motion to dissolve the injunction, upon which hearing the court dissolved the injunction and sustained the demurrer to the bill. At the November rules 1902,

the plaintiff filed his amended bill making Samuel A. LaFevre a party thereto; and otherwise it is substantially the same as the original bill, but alleges that the deeds from Brillhart to LaFevre and from LaFevre to Marshall, conveying the life estate of Brillhart, are invalid, and alleging that it has the effect of creating a cloud on plaintiff's title, disturbing his possession and estate and should be removed; and in addition to the prayer in the original bill, prays that a receiver for said tract of land be appointed, if necessary, to preserve the same, and the rents and profits therfrom, pending this litigation, and that the cloud on plaintiff's title to said land created by the deed from John W. Brillhart to LaFevre and from LaFevre to Marshall be canceled and removed by the court, and that plaintiff be advised and directed as to his duties in the premises and in the performance and execution of the trust set forth in the bill.

It does not appear from the record that any further injunction was granted upon the amended bill, but on the 5th day of May, 1903, the cause came on to be heard upon plaintiff's amended bill and exhibits, process duly served upon all the defendants, rules duly taken and cause set for hearing, and the demurrer to said amended bill of Mary L. Marshall and the plaintiff's joinder therein, "and the court being of opinion that the demurrer filed by the defendant to the amended bill of complaint in this cause shows that the defendant is not entitled to relief prayed for in his bill, it is therefore considered by the court that the said demurrer be and the same is sustained, and the plaintiff's bill is dismissed at his costs." From which decree plaintiff appealed.

The question is, what estate was vested in the trustee, if any, and the extent of his powers under the deed of trust? The deed is in the form of a conveyance in trust to the said Angle by which the equitable estate of the said Brillhart in the farm is conveyed to the trustee, not coupled with any interest but solely for the purposes of managing the farm and transacting the business of the said Brillhart in the same manner as the said Brillhart might do if acting for himself; and the instrument confers no greater rights or powers upon the said Angle than could have been conferred by the ordinary power of attorney; it makes no disposition of the grantor's property in the present or future to any third party, it provides no accumulation of

any fund in the hands of the trustee, it simply authorizes the trustee to manage the property and affairs of the said Brillhart. By its terms the partial disbursement, and, it may be, the entire disbursement, of the fund is provided for.    Under the fifth clause of the deed provision is made for the expenditure of the fund by the payment to the grantor of such sums as may be necessary for his own comfortable maintenance, and shall expend for the personal benefit and comfort of the grantor such other sums for medicine, medical advice, clothing, travelling expenses, etc., as the said grantor may require.    The expenditure for the last mentioned purpose being limited, however, to $30 per month, but, if more than that should be needed, the trustee was required to allow it, but should not be called upon to pay such excess until the end of the year, and until he had made his annual settlement, "it being the intent of this paragraph that all expenditures necessary for the comfortable maintenance and health, of the said John W. Brillhart shall be made in reason and without stint."    Thus opening the door for the expenditure of an indefinite portion or all of the funds that might come into the hands of the trustee.    The trustee had no power over the property except to manage it; he had no discretion as to the specific expenditures provided for, and under none of its provisions does it contemplate the accumulation of income from the properties. in the hands of the trustee, or prohibit the use of any part of the property; and there is nothing contained in the trust deed to show any intention of the grantor that he had at the time of its execution in contemplation the interest of any person other than himself, except that, in the preamble expressing his reason for making the deed, he says, by reason of bodily infirmities, (more particularly the loss of speech brought on by paralysis: and other bodily infirmities) he had become incapable of managing his large financial interests as they should be managed,. "both in the interest of himself as life tenant and of his children as remaindermen."    In this he clearly had reference to the management of the farms and the condition in which they should be kept and left for the benefit of the remaindermen. He makes no reference to his heirs or as to anything that should be vested in him, and go to his children at the time of his: death.    He refers to them simply as reamindermen taking from their mother at the termination of his life estate therein.

It is insisted by counsel for appellant that the deed is irrevocable; that Brillhart had no right or power to revoke it. It is true the deed upon its face says that it is irrevocable. In 1 A. & E. E. L. (2d Ed.) 1217: "The power of revocation exists even though it be expressly stipulated that the agency is irrevocable or exclusive." Citing *Blackstone* v. *Buttermore,* 53 Pa. State, 266, where it is held: "1. It is only when a power of attorney constituting a mere agency is coupled with an interest in the thing itself or the estate which is its subject, that it is irrevocable. 2. A mere power is in its nature revocable when it concerns the interest of the principal alone; even if there be an express declaration of irrevocability. 3. An interest in the proceeds to arise as compensation for executing the power will not make it irrevocable. 4. To make an agreement for irrevocability in a power to transact business binding, there must be a consideration independent of the compensation to be rendered for the services to be performed." Also *Rowan* v. *Hull* (W. Va.) decided at this term. And in *McGregor* v. *Gardner,* 14 Iowa 326 it is held: "A power of attorney may be revoked by tne principal, notwithstanding it is in terms irrevocable, unless it is coupled with an interest in the agent or is supported by a consideration; and the use of the word 'irrevocable' in a power when not thus coupled or supported confers no greater authority upon the agent than an ordinary power of attorney." And in *Walker* v. *Denison,* 86 Ill. 142: "The principal may revoke the authority of his agent at his mere pleasure, although in its terms the authority may be expressly declared to be irrevocable. There are exceptions to the rule when the authority or power is coupled with an interest, or where it is given for a valuable consideration, or where it is part of a security. In these cases it is irrevocable whether so expressed or not. A power coupled with an interest is, when the power or authority is coupled with an interest in the thing itself actually vested in the agent. It must not be merely an interest in that which is produced by the exercise of the power. The former is irrevocable while the latter is revocable, though expressed to be irrevocable." It is there further held: "When the principal who has given a power of attorney to sell, himself sells and disposes of the thing before a sale by the agent, this will be a revocation of the power by operation of law." In 27 A. & E. E. L. 113, it is said: "It

matters little what form of words has been employed to create the trust, particularly in instruments of a testamentary character, the doctrine just stated being universal; that is to say, that despite the language of the instrument, whatever estate is necessary for the full execution of the trust, vests in the trustee, and no more. 'The court is always reluctant,' says a standard author, 'to enlarge an estate in trustees beyond the terms of the gift; and it will not be done, unless it is necessary for the execution of the trust. * * * * In point of duration, likewise, the trustee's estate is measured by the terms of the trust. It will stand so long as any legitimate purpose contemplated by the settler remains unfulfilled. But so soon as the objects for which the trust was created shall have been accomplished, or the need for their attainment shall have failed, the trust estate ceases, and the estate vests in the beneficiary, without the formality of a conveyance, the statute of uses conveying the title by an arbitrary presumption of a conveyance, or by a deed formally executed." And in *Bryan* v. *Weems*, 29 Ala. 423 (65 Am. Dec. 407), it is held: "The estate of the trustee will not be enlarged beyond the actual demands of the trust even though the language employed might justify it. The purpose is to give no greater powers than it was the evident intent of the settler to create." See also *Greenwood* v. *Coleman*, 34 Ala. 150; *West* v. *Fitz*, 109 Ill. 425; *McElroy* v. *McElroy*, 113 Mass. 509; *Ware* v. *Richardson*, 3 Md. 505; 56 Am. Dec. 762; *Coulter* v. *Roberston*, 24 Miss. 278. In *Doe, lessee of Poor*, v. *Considine*, 6 Wall 458, Justice Swayne in delivering the opinion of the court, at page 471 says, it is "well settled that where no intention to the contrary appears the language used in creating the estate will be limited and restrained to the purposes of its creation. And when they are satisfied the estate of the trustee ceases to exist, and his title becomes extinct. The extent and duration of the estate are measured by the objects of its creation." This is quoted with approval in *Young* v. *Bradley*, 101 U. S. 782. It clearly appears from the deed itself, in case at bar, that the sole object of Brillhart was to confer upon Angle authority to manage and direct his business, and especially to control and manage the farms and to collect and pay the rents to Brillhart, because of his physical inability to move about and personally supervise their management, and whenever he sold and disposed of his

life estate in said farm the object and purpose of the execution of the deed of trust was satisfied as far as that particular farm was concerned, and the title of the trustee became extinct, there being no further active trust as to said farm, unless it would be to take charge of the proceeds of the sale of the life estate therein, and there would be no responsibility on that account unless it was passed to the hands of the trustee by the said Brillhart.

The authorities cited by the appallant are based, for the most part, on spendthrift trusts and trusts created for the benefit of third parties. It is clear that Brillhart was intending to empower Angle to manage his farms and attend to his business generally because of his own physical ability and solely for his own benefit. It is not alleged there was any mental incapacity nor tnat he was overreached in any manner by LeFevre in making the purchase from him of his life estate in the farm.

There is no error in the decree of the circuit court and it is therefore affirmed.

*Affirmed.*